20103

Joseph SMITH, Appellant, v. Samuel HENDRIX, Chairman of the Lexington County Registration and Elections Commission and Curtis Shealy, Respondents.

(219 S. E. (2d) 312)

418

*Henry H. Taylor, Esq.,* of *Dent, Kirkland, Taylor & Wilson,* West Columbia, *for Appellant,* cites:

*Messrs. Donald V. Myers, Asst. Atty. Gen.,* of Columbia, and *James E. Barfield,* of *Long, Barfield, Bouknight, Nicholson and Davis,* Lexington, *for Respondents,* cite:

*Henry H. Taylor, Esq.,* of *Dent, Kirkland, Taylor & Wilson,* West Columbia, *for Appellant,* in Reply.

October 21, 1975.

RHODES, Justice:

Petitioner-appellant, Joseph Smith, seeks a recount of the votes cast in an election in which he was a candidate contending that all votes should have been invalidated in instances where the voter had voted both a straight party ticket and for a specific individual candidate of the opposite party on the same ballot. This practice is referred to as "crossover voting", and it is undisputed that these votes were counted in the election.

> The Circuit Court held that petitioner was precluded from asserting the present action because he failed to pursue the statutory remedy for protesting the

result of an election contained in §§ 23-453 and 23-453.2 of the 1962 Code of Laws of South Carolina (1974 Cum. Supp.). This Court is convinced that such decision is correct, and that petitioner's failure to so proceed is fatal to the present action.[1]

Petitioner was a candidate for the District 2 seats on the Lexington County Council in the general election of November 5, 1974. His opponent was the respondent, Curtis Shealy. Shealy received a majority of the votes cast in the election but because the margin was less than one (1%) percent a mandatory recount was conducted under § 23-476.3 of the 1962 Code. On November 9, 1974, the Lexington County Board of Canvassers declared Shealy the winner by a margin of 16 votes. All voting in Lexington County was conducted with vote recorders and tabulated by a computer which was programmed to count crossover votes.[2]

After petitioner became aware of a successful challenge before the State Board of Canvassers of the counting of crossover votes by a candidate for another office in Lexington County, he filed a protest with the Lexington County Board of Canvassers on December 4, 1974, requesting a recount of the votes in his race using a modified computer program which would not credit either candidate with a

---

[1] As an additional sustaining ground, the Circuit Court ruled that crossover votes were properly counted in the election for the reason that they are not specifically prohibited by law and are expressive of the determinable intention of the voter. In light of the above holding, we do not reach a decision on the legality of crossover voting.

[2] A vote recorder is a small device into which the voter inserts a specially designed ballot containing perforated circles opposite each candidate's name. The voter, using a stylus attached to the recorder, perforates the circule opposite the name of the candidate for whom he desires to vote. The ballot used in this election contained nine pages, and a straight party vote for all offices on the ballot could be effectuated by simply perforating the circle opposite the party on page one.

The specifications for vote recorders are contained in § 23-400.101 et seq.

When a crossover vote was encountered, the program did not tabulate the vote for the candidate of the party for which a straight party ticket was voted for that particular office, but counted the vote for the candidate of the opposite party for whom the vote was specifically cast.

vote whenever a crossover vote was encountered. His request was denied [3] and on December 10, 1974, he instituted this action in the Common Pleas Court for an order requiring the respondent, Samuel Hendrix (Chairman of the County Board of Canvassers), to conduct a recount in which crossover votes would not be counted for either candidate.

It is clear from the foregoing recital of facts that the essence of petitioner's action is the contest of an election. The South Carolina Constitution specifically mandates that the General Assembly shall "establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process." Art. 2, § 10. Pursuant to such constitutional mandate, the General Assembly has enacted Title 23 of the 1962 Code. This title provides, *inter alia,* a comprehensive procedure by which elections are to be contested. A candidate seeking to contest a county election shall: (1) file a protest in writing with the County Board of Canvassers by noon Monday following the day of the declaration by the Board of the result of the election (§ 23-453); (2) if aggrieved by the decision of the County Board of Canvassers, he may then file an appeal with the State Board of Canvassers not later than noon Monday next following such decision (§ 23-453.2); (3) from the decision of the State Board of Canvassers, he may appeal directly to the Supreme Court on petition for a writ of *certiorari* and shall be granted first priority of consideration by the Court (§ 23-476).

The above-stated statutory provisions are simple, unambiguous, and expeditious. The manifest intent of the General Assembly is that election contests be disposed of with the maximum dispatch consistent with due process of law. It is self-evident that protracted election disputes produce an instability in government inimical to the public welfare.

---

[3] The record does not specifically set forth the ground for the denial but it seems apparent that it was because the protest was not timely filed in accordance with § 23-453. No appeal was taken to the State Board of Canvassers as allowed under § 23-453.2.

Under the applicable statute, petitioner was required to file his protest with the County Board of Canvassers not later than noon November 11, 1974. No protest having been filed, the declaration of the result by such Board was final.

Petitioner seeks to avoid the application of the protest statutes by characterizing this action as a *mandamus* proceeding. This argument is aborted at its inception by the settled law that where there is other adequate remedy, a writ of *mandamus* cannot rightfully issue. *Parker v. Brown,* 195 S. C. 35, 10 S. E. (2d) 625 (1940); *Willimon v. City of Greenville,* 243 S. C. 82, 132 S. E. (2d) 169 (1963); *Harrison v. S. C. Tax Comm.,* 261 S. C. 302, 199 S. E. (2d) 763 (1973). In this case, petitioner had an adequate remedy under the protest statute.

Petitioner further contends that the present action is authorized under § 10-2256(1) of the 1962 Code, which provides a means by which title to a public office may be tried. It is sufficient to state that prior leave of the Circuit Court was not obtained to bring the action, as required by this statute, and this Court has no hesitancy in concluding that this statute has no application to election contests in the context of the record before us. See *Pettigrew v. Bell,* 34 S. C. 104, 12 S. E. 1023 (1891).

Finally, petitioner cursorily argues that the period for protesting an election under § 23-453 of the 1962 Code, is unreasonable when applied to computer-tabulated elections, and thus, violates the due process clauses of the United States and South Carolina Constitutions. The record is devoid of any factual basis in support of petitioner's argument and must be rejected.

The prior order of this Court preserving the ballots until disposition of this appeal is vacated.

Affirmed.

LEWIS, C. J., and LITTLEJOHN and NESS, JJ., concur.

GREGORY, J., not participating.